Case 1:19-mj-00321-BPG Document 3 Filed 02/11/19 Page 1 of 2

FILED \_\_\_\_\_ ENTERED
\_\_\_\_\_ LOGGED \_\_\_\_\_ RECEIVED

FEB 11 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF BLACK IPHONE IN THE UNITED STATES BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES' POSSESSION | Case No. 19-0321 BPG |

## AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT

I, KELVIN JACKSON, being first duly sworn, hereby depose and state that follows:

### Introduction

1. Your Affiant makes this affidavit in support of an application under Federal Rule of Criminal Procedure 41 for a search and seizure warrant authorizing the examination of one cellular telephone as fully described in Attachment A (referred to as the **Target Device**")—which is in the United States Bureau of Alcohol, Tobacco, Firearms and Explosives' possession, and the extraction of electronically stored information identified in Attachment B from the **Target Device**.

2. Pursuant to a state search and seizure warrant, law enforcement found and seized the **Target Device** from a 2007 Toyota Corolla bearing Maryland license plate 9DAB21 (hereinafter referred to as "HOBBS' VEHICLE" or "his VEHICLE") that Erick Rahumid Hobbs a/k/a Eric Muhammad ("HOBBS") was driving on February 4, 2018.

3. Your Affiant submits that probable cause exists to believe that a search of the **Target Device**, in accord with Attachment B, will uncover evidence and fruits of prohibited gun possession in violation of 18 U.S.C. § 922(g).

### Affiant's Background

4. Your Affiant is a law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by the law to conduct investigations of, and to make arrests for, the offenses enumerated in 18 U.S.C. § 2516.

5. Your Affiant has been a Special Agent with the ATF since March 2014. From October 2014, your Affiant has been assigned to a joint task force comprised of ATF agents and Baltimore Police Department detectives.

6. As an ATF Special Agent, your Affiant has participated in numerous investigations involving firearm violations, arsons, gangs, witness tampering, and controlled dangerous substance ("CDS") trafficking. Specifically, your Affiant has conducted covert surveillance of suspected CDS traffickers, interviewed individuals involved in gang activity, executed state and federal search and arrest warrants involving violent offenders, and seized firearms and controlled dangerous substances.

7. Prior to being an ATF Special Agent, your Affiant was a United States Bureau of Customs and Border Protection Federal Officer for eighteen (18) months. In that capacity, he participated in interdictions of violent fugitives who attempted to cross the United States-Mexico international border and seized controlled dangerous substances imported into the United States.

8. Based on your Affiant's training, knowledge, and experience, he has become familiar with the following: the manner in which (1) persons sell, purchase, and use in furtherance of crimes of violence firearms; and (2) prohibited persons, as defined under section 18 U.S.C. § 922(g), illegally possessing firearms.

9. Specifically, based on your Affiant's training, knowledge, and experience, your Affiant has learned the following: Prohibited gun possessors often take or cause be taken photographs of themselves with firearms, their other property, and/or their associates. They usually maintain those photographs in their homes, vehicles, or electronic devices; or on their person. The electronic devices often store data for long periods of time.

## Basis of Information

10. The facts set forth in this Affidavit are based upon your Affiant's (1) personal knowledge, (2) review of documents and other evidence, and (3) conversations with law enforcement officers and other individuals who have personal knowledge of the events and circumstances described as well as (4) information gained through training and experience. Because your Affiant submitted this Affidavit for the limited purpose of establishing probable cause for the requested search warrant, he has not included every detail of this investigation. Rather, your Affiant has included only those facts that are sufficient to support a probable cause finding for the issuance of the requested search warrant.

## Probable Cause

11. On February 3, 2018, Baltimore County Police Department ("BCPD") officers responded to the residence located at 904 Punjab Drive, Essex, Maryland ("W-1's residence") regarding a home invasion. The officers arrived there and interviewed the complaining witness (hereinafter referred to as "W-1"). During the interview, W-1 told the officers that "Muhammad," used a handgun to break her rear kitchen window from the outside; pointed the handgun at W-1 and W-1's juvenile child (hereinafter referred to as "W-2"), demanding that they open the front door; and threatened to shoot W-2 if W-1 did not give him a television. W-1 also stated that he forcibly entered the front door of her residence after W-1 unlocked that door and left with the television.

12. Law enforcement established that the suspect's name was HOBBS. HOBBS, having been previously convicted of at least one crime punishable by more than one year, is prohibited from possessing a firearm or ammunition.

13. On the morning of February 4, 2018, the officers located HOBBS operating his

VEHICLE near the 2400 block of Loyola Northway Baltimore, Maryland 21215. The police officers attempted to conduct a stop of HOBBS' VEHICLE. HOBBS, however, fled the scene in his VEHICLE and subsequently crashed into a nearby parked vehicle at the intersection of North Avenue and McCullough Street in Baltimore, Maryland. After the crash, HOBBS exited his VEHICLE, causing a handgun to drop to the ground. The officers recovered a loaded Ruger P89 9mm pistol.

14. On the same day, the Honorable Colleen A. Cavanaugh of the Baltimore County Circuit Court issued a search and seizure warrant for HOBBS' VEHICLE. During the execution of that warrant, the officers recovered paperwork in HOBBS' name from his VEHICLE's center console and the **Target Device** from the floorboard on the driver's side of HOBBS' VEHICLE.

## Technical Terms

15. Based on my training and experience, your Affiant uses the following technical terms to convey the following meanings:

   a. *Wireless telephone*: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include Global Positioning System ("GPS") technology for determining the location of the device.

   b. *Digital camera*: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images.

4

       Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media includes various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.   *Portable media player*: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media includes various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.   *GPS*: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.   *PDA*: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media includes various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

  f. *IP Address*: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

  g. *Internet*: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

Based on your Affiant's training, experience, and research, he knows that the **Target Device** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, with the capability to access the Internet. In your Affiant's training and experience, examining data stored on a device of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## Electronic Storage and Forensic Analysis

16. Based on your Affiant's knowledge, training, and experience, he knows that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on such devices. This information can sometimes be recovered with forensics tools.

17. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Target Device** was used, the purpose of its use, who used it, and when was it used. There is probable cause to believe that such forensic electronic evidence might be on the **Target Device** because:

6

      a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

      c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when were they used.

      d.      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when it was used, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

18. *Nature of examination.* Based on the foregoing, and consistent with Federal Rule of Criminal Procedure 41(e)(2)(B), the warrant for which the Affiant is applying would permit the examination of the **Target Device** consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

19. *Manner of execution.* Because this warrant seeks only permission to examine one device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, your Affiant submits that there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## Conclusion

20. Based on the information provided in this Affidavit, your Affiant respectfully submits that probable cause exists to believe a search of the **Target Device**, in accord with Attachment B, will uncover evidence and fruits of prohibited gun possession in violation of 18 U.S.C. § 922(g).

_____
Kelvin Jackson
Special Agent
Bureau of Alcohol, Tobacco, Firearms and   Explosives

Sworn and subscribed to before me on this 25TH day of January, 2019.

_____
Honorable Beth P. Gesner
United States Magistrate Judge

19 - 0 3 2 1 BPG

## Attachment A: Property to be Searched

The property to be searched is a black Apple iPhone, Model No. A1778 bearing FCC ID No. BCG-E3091A in a black protective case—which is in the United States Bureau of Alcohol, Tobacco, Firearms and Explosives' possession (referred to as the "**Target Device**").

**Attachment B: Items to be Seized From the Target Device**

1. This warrant authorizes the search and seizure of all records contained within the cellular telephone described in Attachment A which constitute evidence of violations of 18 U.S.C. § 922(g) by Erick Rahumid Hobbs a/k/a Eric Muhammad, including, but not limited to, the following:

   a. images;

   b. videos;

   c. records of incoming and outgoing voice communications;

   d. records of incoming and outgoing text messages;

   e. the content of incoming and outgoing text messages;

   f. voicemails;

   g. e-mails;

   h. voice recordings;

   i. contact lists;

   j. data from third-party applications (including social media applications like Facebook and Instagram and messaging programs like WhatsApp and Snapchat);

   k. location data;

   l. bank records, checks, credit card bills, account information, and other financial records; and

   n. evidence of who used, owned, or controlled the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   o. evidence of software that would allow others to control the **Target Device**, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   p. evidence of the lack of such malicious software;

q. evidence of the attachment to the **Target Device** of other storage devices or similar containers for electronic evidence;

r. evidence of counter forensic programs (and associated data) that are designed to eliminate data from the **Target Device**;

s. evidence of the times the **Target Device** was used;

t. passwords, encryption keys, and other access devices that may be necessary to access the **Target Device**;

u. documentation and manuals that may be necessary to access the Devices or to conduct a forensic examination of the Devices;

v. contextual information necessary to understand the evidence described in this attachment.

2. The search procedure of the electronic data for the items described in Paragraph 1 may include the following techniques (the following is a non-exhaustive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting the government examination of all the data necessary to determine whether the data falls within the items to be seized):

a. surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

b. "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

c. "scanning" storage areas to discover and possible recover recently deleted files;

d. "scanning" storage areas for deliberately hidden files; or

e. performing key word or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are related to the subject matter of the investigation.

3. If after performing these procedures, the directories, files, or storage areas do not reveal evidence of drug trafficking or conspiracy in violation 18 U.S.C. § 922(g), the further search of that particular directory, file, or storage area shall cease.